O’Neall, J.
The fourteenth section of the Act of 1740, P. L. 156, is in the following words: “And whereas, slaves may be harbored and encouraged to commit offences, and concealed, and received by free negroes, and such free negroes may escape the punishment due to their crime, for want of sufficent and legal evidence against them; be it enacted tbat the evidence of any free Indian or slave, without oath, shall in like manner be allowed and admitted in all cases against any free negroes, Indians, (free Indians in amity with tbis government only excepted,) mulatto, or mustizo; and in all crimes and offences committed by free negroes, Indians, (except as before excepted,) mulattoes, or mustizoes, shall be proceeded in, beard, tried, adjudged and determined by the justices and freeholders appointed by tbis Act, for the trial of slaves, in like manner, order, -and form, as is hereby directed and appointed for the proceedings and trial of crimes and offences committed by slaves; any law, statute, usage, or custom to the contrary notwithstanding.”
The first ground of appeal presents the question : what is meant by the term free Indians in amity with this government ? The early history of South Carolina shows that there were several tribes of Indians within the State, maintaining sometimes pacific, and sometimes hostile relations to the State — so, too, it is known, that many members of these tribes, either upon their tribes becoming extinct or from some other cause, resided among the whites, and they or their descendants, from our earliest history, have been considered as standing in a different order or caste from free negroes. The Act *176 before us, as well as the early history of this State, points to the fact that Indians were also regarded as slaves under some circumstances. I presume such as were taken in war, were treated as the property of the captors. The section of the Act now under consideration, was intended to regulate the trial of free Indians not in amity with this government. It must have applied alone to such as were within the limits of the State: whether residing with the tribes or not, does not seem to be distinguished by the Act. But I think South Carolina never attempted to exercise civil or criminal jurisdiction over the tribes of Indians living within her limits, and maintaining a separate existence: it was when individuals wandered off from their tribes, or the tribes bad become extinct, that they became by residence among us amenable to our laws. Considering the Act as applying to free Indians separated from their tribes, the construction must either be, that if the Indian himself or herself was in friendly relations to the white inhabitants of the State, or that be or she belonged to a tribe of Indians in amity with the government, in either case that they were to be treated as free Indians in amity, and not liable to be tried under the Act of 1740. If the Indian belonged to an extinct tribe, the first construction would be the true one: for then the amity required to give him or her a status in our society, would, from necessity, be personal; but if bis tribe still existed, then it would be necessary to show, actually or by presumption, that such tribe was in a relation of amity with this government. In either of these points of view, the instructions to the jury were right; for if the plaintiff’s grandmother belonged to an extinct tribe of Indians, then her amity with the government was personal, and her residence within the State was sufficient evidence of it. If she belonged to an existing tribe of Indians, then it was properly put to the jury to presume, from a residence. of the plaintiff’s grandmother fifty years ago, that she was to be regarded as a free Indian in amity with this government.
The second ground presents no difficulty — the meaning of “ mustizo” is, as stated in my report, “ the issue of a negro and an Indian.”
The motion is dismissed.